# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CARLOS HUMBERTO GUILLEN-
RIVERA,

                    Petitioner,

vs.                                            Case No: 6:12-cv-293-Orl-37GJK

UNITED STATES OF AMERICA,

                    Respondent.

_____

## ORDER

This cause is before the Court on Petitioner Carlos Humberto Guillen-Rivera's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. No. 5.)[1] The Government filed a Motion to Dismiss or, Alternatively, Response in Opposition to Defendant's Pro Se Motion Pursuant to 28 U.S.C. § 2255 (Doc. No. 7), which the Court construed as a Response to Petitioner's Amended 28 U.S.C. § 2255 Motion, and Petitioner filed a Petitioner's Response to Respondent's Response to Petitioner's 28 USC § 2255 (Doc. No. 8) and an Objection to Government's Response (Doc. No. 10). For the reasons that follow, the Court concludes Petitioner's Motion is due to be denied.[2]

---

   [1] In this Order, the Court refers to filings in this action, No. 6:12-cv-293-Orl-37GJK, using the abbreviation "Doc. No." When referring to filings in Petitioner's criminal case, No. 6:10-cr-47-Orl-37GJK, the Court uses the abbreviation "Cr. Doc. No."

   [2] Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the instant petition. No hearing is required when the record establishes conclusively that a section 2255 motion lacks merit. *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

## BACKGROUND

On May 19, 2010, Petitioner entered a plea of guilty to conspiracy to possess firearms and ammunition as an illegal alien, conspiracy to possess firearms not registered in the National Firearms Registration and Transfer Record, and conspiracy to conceal and export firearms from the United States, in violation of 18 U.S.C. § 371 (Count One), as well as possession of unregistered firearms (short-barreled rifles), in violation of 26 U.S.C. §§ 5861(d), 5871, and 18 U.S.C. § 2 (Count Three).[3] (Cr. Doc. No. 160.) Petitioner's guilty plea was entered pursuant to a written plea agreement. (Cr. Doc. No. 50.) The plea agreement contains a waiver of appeal provision that provides, in relevant part:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Cr. Doc. No. 85, pp. 17-18.)

On September 20, 2010, Petitioner was sentenced to sixty months imprisonment as to Count One and eighty-four months imprisonment as to Count Three, said terms ordered to run concurrently. (Cr. Doc. No. 161, pp. 22-23.) On October 11, 2010,

---

[3] Pursuant to the written plea agreement, the Government dismissed Count Two of the indictment.

Petitioner filed a notice of appeal to the Eleventh Circuit Court of Appeals. (Cr. Doc. No. 142). Counsel for Petitioner filed an *Anders* brief in the Eleventh Circuit in which he stated there was no non-frivolous appealable issue. (Doc. No. 7-4.) The Eleventh Circuit affirmed Petitioner's conviction and sentence. *United States v. Guillen-Rivera*, 438 F. App'x 858, at *1 (11th Cir. 2011).

On March 14, 2012, Petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 5, the "Petition").[4] Petitioner asserts as grounds for relief that (1) he was erroneously held responsible for conduct by his co-conspirators that was not foreseeable to him (Doc. No. 5, p. 5); (2) he was erroneously not found to have played a minimal role in the conspiracy (Doc. No. 5, p. 6); and (3) he was denied effective assistance of counsel (Doc. No. 5, p. 7-8). The Government argues that Petitioner waived his right to appeal his sentence. (Doc. No. 7, p. 3.) The Government also argues that Petitioner's motion is procedurally barred and without merit. (Doc. No. 7, p. 6-8.)

## DISCUSSION

The Court first examines Petitioner's sentence appeal waiver. Next, the Court considers whether the substantive arguments raised by Petitioner are procedurally barred. Finally, the Court evaluates Petitioner's claims of ineffective assistance of counsel.

### A.    Appeal Waiver

The Court considers the appeal waiver in Petitioner's plea agreement in two respects.  First, the Court discusses the law of the Eleventh Circuit as it applies to

---

[4] The Government argues that Petitioner's motion is timely, and the Court agrees.

waivers of a criminal defendant's right to appeal the sentence imposed by the court. Second, the Court considers the waiver as it applies to Petitioner's claims of ineffective assistance of counsel in connection with entering or negotiating his plea agreement.

### 1.    Sentence Appeal Waivers

The Eleventh Circuit has held that the right to appeal a criminal sentence is a statutory right that can be waived. *United States v. Bushert*, 997 F.2d 1343, 1347, 1351 (11th Cir. 1993). A sentence appeal waiver is valid as long as it is made knowingly and voluntarily. *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999) (citing *Bushert*, 997 F.2d at 1350). To establish that a waiver is knowing and voluntary, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997) (citing *Bushert*, 997 F.2d at 1351); *see also Williams v. United States*, 396 F.3d 1340 (11th Cir. 2005).

In his Objection to Government's Response, Petitioner argues that a defendant cannot waive his right to appeal a sentence that has not yet been imposed at the time of the waiver. (Doc. No. 10, p. 2.) Petitioner urges the Court to apply the holdings of *United States v. Raynor*, 989 F. Supp. 43, 44 (D.D.C. 1997) ("a defendant can never knowingly and intelligently waive the right to appeal or collaterally attack a sentence that has not yet been imposed.") and *United States v. Melancon*, 972 F.2d 566, 579-80 (5th Cir. 1992) (Parker, J., concurring) ("I do not think that a defendant can ever knowingly and intelligently waive, as part of a plea agreement, the right to appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement."). However,

because *Bushert*, *Benitez-Zapata*, *Howle*, and *Williams* are binding precedent, this Court must decline Petitioner's request to apply the holding of *Raynor*.

As to whether Petitioner knowingly and voluntarily waived his appellate rights as to his sentence, at the change of plea hearing on May 19, 2010, Petitioner confirmed that he had read the plea agreement, discussed it with his attorney, and understood it. (Cr. Doc. No. 160 12:3-9.) Petitioner, communicating through an interpreter, confirmed that his decision to plead guilty was free from any promises or representations other than those contained in the written plea agreement. (Cr. Doc. No. 160 11:13-17.) The Magistrate Judge specifically addressed sentencing, and Petitioner indicated that he understood the possible maximum sentences he faced:

> [THE COURT:] With respect to Count One, the maximum sentence is five years in prison. Do you understand, sir?
>
> THE INTERPRETER: Yes.

(Cr. Doc. No. 160 13:17-19.)

> THE COURT: With respect to Count Three, the maximum sentence with respect to that count is up to ten years in prison. Do you understand?
>
> THE INTERPRETER: Yes.

(Cr. Doc. No. 160 14:11-14.) Petitioner also confirmed that he understood that the court could sentence him to the maximum penalties:

> THE COURT: You understand that the sentencing guidelines are merely advisory and the Court can, if it desires to do so, sentence you up to the maximum penalties that we reviewed for each of the counts in this case, correct?
>
> THE INTERPRETER: Yes.

(Cr. Doc. No. 160 15:9-14.) Petitioner also confirmed that he understood that he could not know his sentence until the sentencing:

> THE COURT: Sir, because of all the things we've been discussing in connection with sentencing, at this point in time no one can tell you precisely what sentence you will receive at sentencing nor can they tell you what guideline range may apply to you at sentencing. The best they can offer you about those two items is an educated estimate. Do you understand?
>
> THE INTERPRETER: Yes.

(Cr. Doc. No. 160 23:23-24:5.) Petitioner confirmed that he understood that he would not be able to withdraw his guilty plea. (Cr. Doc. No. 160 24:21-25:9.)

Thereafter, the Magistrate Judge specifically discussed the appeal waiver provision with Petitioner:

> THE COURT: In addition, sir, under your written Plea Agreement, you're giving up your right to appeal your sentence in all but for the very narrow circumstances that I'd like to review with you.

(Cr. Doc. No. 160 25:10-13.) The Magistrate Judge enumerated the four specific situations in which Petitioner would be able to appeal his sentence: (1) if the court were to impose a sentence exceeding the sentencing guideline range determined by the court; (2) if the court were to impose a sentence exceeding the maximum penalty; (3) if Petitioner were to argue that the penalty violated Petitioner's Eighth Amendment rights; and (4) if the government were to appeal the sentence. (Cr. Doc. No. 160 25:13-26:8.) The Magistrate Judge then asked:

> [THE COURT:] In all but those four very narrow circumstances, you're giving up your right to appeal your sentence once it's imposed. Do you understand?
>
> THE INTERPRETER: Yes.

(Cr. Doc. No. 160 28, 15-19.)

The Magistrate Judge also explicitly asked Petitioner if he understood that he was giving up the right to claim ineffective assistance of counsel, and Petitioner

6

indicated that he understood:

> THE COURT: Furthermore, sir, under your written Plea Agreement, you're giving up your right to claim ineffective assistance of your lawyer in regard to this matter. Do you understand?
>
> THE INTERPRETER: Yes.

(Cr. Doc. No. 160 26:13-23.)

The Magistrate Judge inquired whether Petitioner was "making [his] decision here today about whether or not to plead guilty freely and voluntarily," to which Petitioner replied that he was. (Cr. Doc. No. 160 27:7-9.) The Magistrate Judge also asked:

> THE COURT: All right. Have you had any difficulty understanding our communications here today?
>
> THE INTERPRETER: No.

(Cr. Doc. No. 160 32:12-14.)

Thus, the record shows that the Magistrate Judge specifically questioned Petitioner concerning the sentence appeal waiver during the Rule 11 colloquy. *Benitez-Zapata*, 131 F.3d at 1446. It is clear from the record that Petitioner understood the full significance of the waiver of his appeal rights with regard to his sentence. *Id.* Subject to the constraints of precedent, the Court finds that Petitioner's sentence appeal waiver was knowing and voluntary and, therefore, valid. *See Bushert*, 997 F.2d at 1351.

## 2.    Appeal Waiver As To Entering Or Negotiating A Plea

While it is clear that the law of this circuit will enforce the bargain made between a criminal defendant and the government as to a sentence appeal waiver in general, the law is not so well established that the waiver will be effective where the collateral claim relates to ineffective assistance of counsel in connection with entering or negotiating a

plea. *Williams*, 396 F.3d at 1342 n.2 (noting "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffective assistance at sentencing or a claim challenging the validity of the plea or agreement"); *Bushert*, 997 F.2d at 1350 n.17 (noting that "[e]ven judicially enforced, knowing and voluntary sentence appeal waivers . . . which include a waiver of collateral appeal of [a criminal defendant's] sentence-would not prevent a collateral § 2255 action concerning certain subjects.").

Accordingly, as to Petitioner's claims of ineffective assistance of counsel outside of his criminal sentencing, the Court will consider Petitioner's arguments on their merits, notwithstanding the sentence appeal waiver contained in the plea agreement.

### B.    Procedural Bar

Claims raised and disposed of on direct appeal are generally precluded from reconsideration in a 28 U.S.C. § 2255 proceeding. *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *see also Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978) ( noting "a matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal . . . .").

The Government argues the substantive issue raised by Petitioner in this section 2255 proceeding was disposed of on direct appeal. Indeed, the issue raised by Petitioner was recognized by Petitioner's counsel, who brought the issue to the attention of the appellate court. Petitioner's defense counsel's *Anders* brief states:

> One issue considered by this writer, in light of Guillen-Rivera's "personal responsibility" for only 26 firearms, . . . is his responsibility as a conspirator for 250 firearms as noted in the plea agreement . . . and as determined by the Court at sentencing . . . . This apparent conflict could be an issue, but in view of the plea agreement and the Court's finding at sentencing, it is frivolous.

(Doc. No. 7-4, 5-6.) The Eleventh Circuit reviewed Petitioner's case, found no non-frivolous appealable issues, and affirmed Petitioner's conviction and sentence. *Guillen-Rivera*, 438 F. App'x 858, at *1. In view of this record, the Court finds the substantive issue with his sentence was raised and disposed of on direct appeal. As such, the Court is precluded from reconsidering the issue in this collateral proceeding. *See Rowan*, 663 F.2d at 1035.

### C.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides criminal defendants with the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). "To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness and (2) that he suffered prejudice as a result of that deficient performance." *Etheridge v. United States*, 287 F. App'x 806, 807-08 (11th Cir. 2008) (citing *Strickland*, 466 U.S. at 687-88). To show deficient performance, a petitioner "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). The court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697.

There is a "strong presumption in favor of competence, and the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." *Chandler*, 218 F.3d at 1315. Review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Id.* at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). A court's review

must be highly deferential and must avoid second-guessing. *Strickland*, 466 U.S. at 689.

The *Strickland* two-part test also applies to challenges to guilty pleas based on ineffective assistance of counsel. *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). A defendant who challenges his guilty plea must show not only that counsel committed professional error, but also a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Cruz v. United States*, 188 F. App'x 908, 912-13 (11th Cir. 2006) (citing *Pease*, 240 F.3d at 941). To be entitled to collateral relief in such cases, a petitioner must "prove serious derelictions on the part of counsel sufficient to show that [her] plea was not, after all, a knowing and intelligent act." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985).

The Court construes Petitioner's Motion as raising four separate claims of ineffective assistance of counsel, as follows.[5]

### 1. Coerced Plea

Petitioner first argues that defense counsel coerced him to enter a guilty plea by misadvising him of the sentence he was facing. (Doc. No. 5-1, p. 7.) Petitioner states that his attorney failed to advise him of the sentence he was facing and instead advised him that his sentence would be significantly less than what he in fact received. (Doc. No. 5-1, p. 7.) The Government argues that Petitioner's statements at the change of plea hearing directly contradict this claim. (Doc. No. 7, p. 11.)

At the change of plea hearing, Petitioner confirmed that he understood that the

---

[5]   In this Order, as discussed in Part A, the Court addresses each claim raised by Petitioner even though one or more of the claims may have been waived by Petitioner.

maximum sentence for Count One was five years and the maximum sentence for Count Three was ten years. (Doc. No. 7-2, 13, 14.) Petitioner stated that he understood that the court could sentence him to the maximum penalties. (Doc. No. 7-2, 15.) Petitioner said he understood that no one could tell him precisely what sentence he would receive at sentencing. (Doc. No. 7-2, 23-24.) Petitioner acknowledged that if the court imposed the maximum sentence or a sentence more severe than the sentencing guidelines, he would not be allowed to withdraw his plea. (Doc. No. 7-2, p. 24-25.) Petitioner was ultimately sentenced to seven years, a sentence below the statutory maximum and less severe than the sentencing guidelines. (Doc. No. 7-3, p. 22.)

The record thus reflects that Petitioner knowingly entered his guilty plea with full knowledge of the potential range of his sentence. *See Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (finding that defendant's "self-serving statements appear to be a last-minute attempt to escape the preclusive effect of the appeal waiver" and noting "the record demonstrates that Petitioner did not mention any assurance by his lawyer that he would receive a lighter sentence during the plea colloquy, and, instead, stated that he understood that his sentence could be different from what counsel had advised and confirmed that no one had promised him anything in exchange for his plea."). Petitioner's sworn statements at the change of plea hearing are not overcome by his subsequent self-serving statements. *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986). The claim is denied.

### 2.   Failure To Object To The Factual Findings In The Pre-Sentencing Report

Petitioner argues that counsel's performance was deficient for failing to object to factual findings in the pre-sentencing report ("PSR"). (Doc. No. 5-1, p. 5.) Specifically,

Petitioner argues that counsel "should have objected at the sentencing hearing when petitioner['s] offense level was much higher than it was suppos[ed] to have been." (Doc. No. 5-1, p. 5.)

The record shows that defense counsel objected at length to factual findings in the PSR. At the sentencing hearing, Defense counsel objected to the number of weapons for which Petitioner was held responsible in the PSR. (Cr. Doc. No. 161, p. 4.) Defense counsel argued that since Petitioner was personally responsible for only twenty-five or twenty-six guns, not the 200 guns listed in the PSR, only six points should have been added to Petitioner's score, not the nine points recommended by the guidelines. (Cr. Doc. No. 161, p. 5.) Adding six points instead of nine would reduce Petitioner's guideline sentence range from a range of ninety-seven to 121 months to a range of seventy to eighty-seven months. (Cr. Doc. No. 161, p. 5.) The sentencing judge, noting that Petitioner pled guilty to participating in a conspiracy that trafficked over 200 guns, overruled the objection. (Cr. Doc. No. 161, p. 6-7.)

After being overruled, Defense Counsel clarified to the court that his objection was that Petitioner should be assigned less responsibility for the number of weapons ascribed to the conspiracy as a whole. (Cr. Doc. No. 161, p. 7.) The sentencing judge found that Petitioner was properly scored based on the number of weapons involved in the conspiracy and determined that the applicable guideline score was an offense level of thirty, with a criminal history category I, which called for a term of imprisonment ranging from ninety-seven to 121 months. (Cr. Doc. No. 161, p. 9.)

After this objection, Defense counsel again argued that Petitioner's role in the conspiracy was "extremely peripheral" and pointed out the disparity between the sentence Petitioner faced and the lesser sentences faced by his equally culpable or

more culpable co-conspirators. (Cr. Doc. No. 161, p. 11.) The Government argued that the reason for the disparity was that Petitioner's co-conspirators proffered with the government, but Petitioner did not. (Cr. Doc. No. 161, p. 15.) The sentencing judge noted that he was aware of the possibility of more severe sentences being imposed on less culpable members of a conspiracy:

> And in terms of the 5(k), I'm often faced with this--it's more than a culpability paradox. It's a culpability injustice when you have highly culpable people who are in a position to offer the government a lot and the people who--whose offense is relatively low and consequently have nothing to give, and it ends up where the more culpable people get a relatively lighter sentence than the people who are not as culpable.

(Cr. Doc. No. 161, p. 17.) After considering "the level of [Petitioner's] culpability in the conspiracy, the fact that he is a hard-working person, a good father and husband, and the fact that he has otherwise lived a law-abiding life in this country," The sentencing judge sentenced Petitioner to eighty-four months. (Cr. Doc. No. 161, p. 22.)

Defense counsel thus not only made a factual objection to the finding in the PSR, but persisted in arguing to the court, after being overruled twice, that the sentencing guideline should be lower to reflect Petitioner's relatively minor role in the conspiracy. Petitioner's eighty-four-month sentence was below the ninety-seven-month minimum recommended by the sentencing guidelines and within the range argued for by defense counsel.   Given these facts, defense counsel's performance was not objectively unreasonable. As such, this claim is denied as well.

### 3.   Failure To Raise Issues On Appeal

It is also possible to construe Petitioner's arguments as claiming that defense counsel's performance was deficient for failing to raise certain issues on appeal. (Doc. No. 5, 7-8, 9.) On appeal, Defense counsel filed an *Anders* brief in which he argued that

Petitioner's case contained no non-frivolous appealable issues. *Guillen-Rivera*, 438 F. App'x 858, at *1; *see Anders v. State of California*, 386 U.S. 738 (1967) (mandating that counsel seeking to withdraw from further representation based upon the belief that an appeal is wholly frivolous must accompany the motion to withdraw with a brief that sets out any irregularities in the trial process or other potential error).

Petitioner argues that defense counsel should have argued that Petitioner was entitled to a reduction of his offense level for his minor role in the conspiracy and that Petitioner was erroneously held responsible for an unforeseeable amount of firearms. (Doc. No. 5, p. 5, 6.) Counsel's appellate brief indicates that he reviewed the record and identified no arguable issues of merit. (*See* Doc. No. 7-4.) The Eleventh Circuit Court of Appeals conducted a *de novo* review of the record and also identified no issue of merit. *Guillen-Rivera*, 438 F. App'x 858, at *1. Given that the Eleventh Circuit affirmed Petitioner's conviction on appeal, this Court finds that defense counsel's performance was reasonable.  This claim is, therefore, denied.

### 4.    Safety valve

Finally, Petitioner argues that defense counsel failed to assert that Petitioner was eligible for a reduced sentence under the "safety valve" provision. (Doc. No. 5-1, p. 7.) The Government argues that the safety valve provision does not apply to Petitioner's case. (Doc. No. 7, p. 13.)

Subsection (5) of the Mandatory Minimum Sentencing Reform Act, 18 U.S.C. § 3553(f), is known as the safety valve provision. It provides:

> Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) . . . .

U.S.S.G. § 5C1.2(a); *see* 18 U.S.C. § 3553(f). In certain cases, the safety valve provision allows district courts to sentence less-culpable defendants without regard to mandatory minimum sentences if the defendant meets certain criteria. *See United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000). As enacted, the safety valve applies only to drug-related offenses brought under 21 U.S.C. § 841 (possession with intent to distribute), § 844 (simple possession), § 846 (conspiracy), § 960 (shipment), and § 963 (attempt and conspiracy). It does not apply to other drug statutes or to non-drug offenses.

The safety valve provision does not apply here. Petitioner was not charged with any of the applicable drug-related statutes. Petitioner entered a guilty plea to violations of 18 U.S.C. § 371, 26 U.S.C. §§ 5861(d), 5871, and 18 U.S.C. § 2, to which the safety valve does not apply. Additionally, the safety valve applies only to cases concerning a statutory mandatory minimum sentence. 18 U.S.C. § 3553(f). Petitioner was not exposed to a statutory mandatory minimum sentence. The only statutory considerations in Petitioner's sentence were the maximum statutory sentences for Counts One and Three. The safety valve thus does not apply to Petitioner's case, and Defense Counsel's failure to raise this issue was not unreasonable.  This claim is denied.

\* \* \* \* \*

In conclusion, the Court is mindful that it must abide by the strong presumption that counsel's conduct in this case falls within the wide range of reasonable professional assistance. *United States v. Cronic*, 466 U.S. 648, 658, 689-90 (1984). Since the record contains no facts which overcome the presumption of competence, the Court concludes

Petitioner has not demonstrated that he was denied effective assistance of counsel.[6]

## CONCLUSION

In view of the foregoing, it is hereby **ORDERED** and **ADJUDGED** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 5) is **DENIED**.  The Clerk is directed to close this file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 15, 2012.

ROY B. DALTON JR.
United States District Judge

---

[6]   The Professional Ethics Committee of The Florida Bar has published a proposed advisory opinion in which it concludes that offering and recommending acceptance of a "plea offer in which a criminal defendant waives past or future ineffective assistance of counsel" is improper; however, that opinion has not been adopted as an advisory ethics opinion by the committee or the Board of Governors of The Florida Bar. *See* Professional Ethics Committee of the Florida Bar, Proposed Advisory Opinion 12-1 (dated June 22, 2012), *available at* http://www.floridabar.org/ TFB/TFBResources.nsf/Attachments/55752A9CFE28A6FF8525731A0065A4C4/$FILE/ 12-1%20PAO.pdf?OpenElement. Because Petitioner does not argue his counsel breached his professional obligations by advising Petitioner to accept a plea offer which contained a waiver for past or future ineffective assistance of counsel, this Court need not address the issue.

Nevertheless, the Court can envision, should The Florida Bar adopt a binding ethics opinion in which its members--and, by extension, the members of the bar of the Middle District--are prohibited from advising criminal defendants with regard to plea offers containing appeal waivers, criminal defendants being deprived of their Sixth Amendment right to counsel. As the Supreme Court has held, "criminal defendants require effective counsel during plea negotiations," and the Sixth Amendment demands it. *Missouri v. Frye*, 132 S. Ct. 1399, 1407-08 (2012). The Court has difficulty understanding how counsel could comply with their ethical obligations (as defined by the proposed advisory opinion) yet provide effective counsel to a criminal defendant while negotiating a plea containing an appeal waiver. In any event, since that scenario is not presented by the facts of this case, the Court can do no more here than ponder the possibilities.

Copies:

Counsel of Record
*Pro Se* Petitioner